**United States District Court**
**District of Massachusetts**

```
_____
                              )
Robert B. Minturn,            )
                              )
        Plaintiff,            )
                              )
        v.                    )        Civil Action No.
                              )        20-10668-NMG
Ernest E. Monrad, et al.,     )
                              )
        Defendants.           )
_____ )
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Plaintiff Robert Minturn ("plaintiff" or "Minturn") alleges that the Trustees of Northeast Investors Trust (collectively, "defendants") improperly withheld retirement benefits owed to him pursuant to a 1989 contract and thereby breached their fiduciary duty under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). In the alternative, plaintiff seeks to recover those benefits based upon a common law breach of contract claim. Pending before the Court is plaintiff's motion for partial summary judgment on the latter claim.

I.   **Background**

   **A. Factual Background**

   The Northeast Investors Trust ("the Trust") is a
Massachusetts business trust that was organized in 1950.  It is
a registered investment company that is governed by trustees
("the Trustees") and operates as a mutual fund to manage the
pooled capital of its shareholders.

   Plaintiff began working for the Trust in the late 1970s and
served in various roles prior to his retirement in 2013,
including as Clerk, Vice President and Chief Legal Officer.
Minturn became a trustee in 1980.

   In 1989, the Trustees executed a "Memorandum of Agreement
by and among Trustees" ("the Agreement") that provided for
trustee compensation among other things.  As a trustee, Minturn
was a party and signatory to the Agreement.  Under its terms,
Minturn was entitled to receive $50,000 each quarter as "current
Trustee's compensation" as well as $100,000 annually for a ten-
year period upon his retirement, incapacity, disability or
death.  The Agreement provided for Minturn's annual retirement
compensation to increase by $25,000 for each $100 million
increase in the net assets of the Trust from and after March 31,
1989, which were then approximately $405 million.  Because the
total net assets of the Trust exceeded $760 million when Minturn

retired (i.e., an increase of more than $300 million), he claims to be entitled to receive $175,000 annually (i.e., an increase of three times $25,000) for a ten-year period to be paid in quarterly installments of $43,750.

The parties disagree as to whether Section 8 of the Agreement providing for the downward adjustment of trustee retirement compensation under certain circumstances governs the retirement compensation owed to Minturn.  Furthermore, the final section of the Agreement, Section 11, stipulates:

> Subject always to the best interests of the shareholders, it is contemplated and intended as between the Trustees of Northeast Investors Trust who are signatories hereto that this Agreement and the provisions hereof for the benefit of the individual Trustees, including provisions with regard to entitlement to payments and additional compensation, shall survive and continue and be made binding upon successor trustees, advisors, management companies, or any other individuals or entities becoming entitled to trustee, advisory and/or management fees from the Trust, however and in whatever form they are paid, despite any change of form or manner of management or operation of the Trust.

The Trustees amended the Agreement on three subsequent occasions, in 1994, 1998 and 2005.  Only the third and final amendment appears to have affected Minturn's rights under the Agreement.  It provides that he is to be paid $62,500 quarterly as "current Officer's compensation" but does not alter his retirement compensation.

Minturn retired from the Trust on December 31, 2013.  From April, 2014, to January, 2018, he received $175,000 annually in equal quarterly installments.  At the February, 2018 Trustee meeting, however, the Trustees voted to reduce Minturn's retirement compensation.  Minturn subsequently received quarterly payments of $10,000 until the Trustees stopped all payments to him in April, 2019.  Since his retirement, Minturn has thus received retirement compensation from the Trust totaling $750,000.

### B. Procedural Background

Plaintiff filed his complaint in this Court in April, 2020, alleging: wrongful denial of benefits in violation of ERISA § 502(a)(1)(B) (Count I), breach of fiduciary duty in violation of ERISA § 502(a)(3) (Count II), entitlement to attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g) (Count III) and, in the alternative, breach of contract (Count IV).  In October of that year, the Court allowed defendants' motion to dismiss with respect to those portions of the complaint that sought to hold the Trust itself liable but otherwise denied the motion.

Minturn filed his motion for partial summary judgment on Count IV pursuant to Fed. R. Civ. P. 56(a) in July, 2021. Defendants timely opposed the motion.

II.   **Motion for Summary Judgment**

A. Legal Standard

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990)).  The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A fact is material if it "might affect the outcome of the suit under the governing law...." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." Id.

If the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine, triable issue. Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The Court must view the entire record in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor. O'Connor v.

Steeves, 994 F.2d 905, 907 (1st Cir. 1993).  Summary judgment is warranted if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Celotex Corp., 477 U.S. at 322-23.

### B. Application

To sustain a claim for breach of contract under Massachusetts law, a plaintiff must demonstrate the existence of a valid and binding contract, that the defendant breached the terms of that contract and that the plaintiff consequently suffered damages. See, e.g., Scholz v. Goudreau, 901 F.3d 37, 43 (1st Cir. 2018).  Parties do not dispute that the first and, assuming a breach, the third of those elements have been satisfied.  Rather, they disagree only as to whether defendants breached the 1989 Agreement by altering Minturn's retirement compensation.

Minturn argues in the affirmative, relying upon both the language of the contract and extrinsic evidence of the signatories' intent.  Defendants, not surprisingly, refute plaintiff's conclusion by contending that, while the contract spells out Minturn's projected retirement compensation, Section 11 of the Agreement, quoted supra in its entirety, permits the Trustees to modify those payments subject to the "best interests

- 6 -

of the shareholders". The matter thus turns on the
interpretation of that provision.

Under Massachusetts law, contract interpretation is a
question of law suitable for resolution on summary judgment
unless the Court finds that the terms of the contract are
ambiguous. See Salls v. Dig. Fed. Credit Union, 349 F. Supp. 3d
81, 86 (D. Mass. 2018), and cases cited. Controversy alone does
not create ambiguity. See Bank v. Int'l Bus. Machines Corp., 145
F.3d 420, 424 (1st Cir. 1998) (quoting Wyner v. North Am.
Specialty Ins. Co., 78 F.3d 752, 754 (1st Cir. 1996)).

> Rather, a contract is only ambiguous where an
> agreement's terms are inconsistent on their face or
> where the phraseology can support reasonable
> differences of opinion as to the meaning of the words
> employed and obligations undertaken.

Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 783 (1st Cir.
2011) (quoting Bank v. Int'l Bus., 145 F.3d at 424). To
determine whether ambiguity exists, "the court must first
examine the language of the contract by itself, independent of
extrinsic evidence." Id. (quoting Bank v. Thermo Elemental Inc.,
451 Mass. 638, 648 (2008)). That language is to be interpreted
based upon its plain meaning while "giving full effect to the
document as a whole." Given v. Com. Ins. Co., 440 Mass. 207, 209
(2003). Only if a contract is ambiguous such that a reasonable
person could interpret it in the manner proposed by the non-
moving party does a contract present a question of fact for a

jury. <u>Nadherny</u> v. <u>Roseland Prop. Co.</u>, 390 F.3d 44, 49 (1st Cir. 2004).

The Court therefore starts out with the language of the Agreement, specifically Section 11.  The parties engage in a semantic battle concerning the applicability of the contractual phrase "[s]ubject always to be best interests of the shareholders."  Minturn contends that the phrase relates only to that section which concerns binding future management fee recipients to the terms of the Agreement.  By contrast, defendants aver that the clause qualifies the entirety of the 1989 Agreement such that the Trustees can revise all of the provisions enumerated, including Minturn's retirement compensation, based upon the best interests of the shareholders.

Minturn has the better of the argument.  Although the provision is an example of how not to draft a contract, it is apparent that the introductory clause modifies the signatories' intent that the Agreement:

> survive and continue and be made binding upon...any individuals or entities becoming entitled to trustee, advisory and/or management fees from the Trust[.]

Thus, the Agreement may impact future management fee recipients "[s]ubject always to the best interests of the shareholders" but that phrase has no bearing on the substantive obligations set

forth in other sections of the contract.  The plaintiff aptly characterizes the provision as precatory, i.e., advisory.

Defendants' efforts to avoid that conclusion are strained and, indeed, unreasonable.  Glossing over the plain language of the Agreement, defendants propose to abrogate its provisions by subjecting all of them to "the best interests of the shareholders", as that term is interpreted by the Trustees.  Not only is that interpretation irrational given the plain language and structure of Section 11, but it would also negate the purpose of the contract.  The preceding ten sections of the Agreement describe both the labor and retirement compensation terms with respect to Minturn and other trustees.  If the Agreement were read as proposed by defendants, it would allow the Trustees effectively to invalidate the substance of the entire Agreement under certain, highly subjective conditions. Such an interpretation is untenable and, consequently, Section 11 does not abrogate Minturn's claim.  Furthermore, the Court need not determine whether Section 8 of the Agreement applies to Minturn because neither party asserts that the conditions specified under that section were met before the Trustees decreased and eventually cut off his payments.

The only citation defendants offer in support of their conclusion that the "subject to" clause should be read as a

guiding principle for the entire Agreement is the century-old case of <u>Green</u> v. <u>Danahy</u>, 223 Mass. 1 (1916).  The contract in that case, which concerned a burial plot, was entirely distinguishable from the one at hand.  The terms of that contract were "subject to the regulations therein contained and such others as may be from time to time prescribed." <u>Id</u>. at 5. That broad conditional phrase is dissimilar to the contractual language here in which the "subject to" clause directly precedes, and therefore logically applies to, a specific following contractual provision.

Here, where the contractual terms in question are unambiguous, the Court declines to examine the proffered extrinsic evidence. <u>Alicea</u> v. <u>Machete Music</u>, 744 F.3d 773, 786 (1st Cir. 2014) ("[E]xtrinsic evidence may be used as an interpretive guide only after the judge or the court determines that the contract is ambiguous on its face or as applied." (quoting <u>Bank</u> v. <u>Thermo</u>, 451 Mass. at 648)).  The Agreement, including the plain language of Section 11 and the import of the document as a whole, make clear that defendants' interpretation is unacceptable.

**ORDER**

For the foregoing reasons, the motion of plaintiff Minturn for summary judgment on Count IV (Docket No. 52) is **ALLOWED.**


**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge


Dated February 10, 2022